**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EDNA A., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No.: 3:19-cv-826-BEN-RBM <br><br> **ORDER AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY** <br><br> **[Docs. 14, 15]** |

### I. <u>INTRODUCTION</u>

Plaintiff Edna A. ("Plaintiff") filed a Complaint under 42 U.S.C. § 405(g) seeking judicial review of the Social Security Administration ("SSA") Commissioner's ("Defendant" or "Commissioner")[1] final decision denying Plaintiff's disability insurance benefits application under Title II of the Social Security Act ("the Act"). (Doc. 1.)

There are two briefs before the Court: (1) Plaintiff's Merits Brief ("Merits Brief"),[2] seeking remand and a direct award of benefits, or alternatively, remand for further

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 17, 2019 and is therefore substituted for Nancy A. Berryhill as Defendant. *See* 42 U.S.C. § 405(g); FED. R. CIV. P. 25(d).

[2] As set forth in the briefing schedule (Doc. 13), the undersigned ordered Plaintiff to file a merits brief pursuant to Civil Local Rule 7.1(e)(6)(e). Plaintiff, however, titled the brief "Opening Brief" and

1

proceedings (Doc. 14); and (2) Defendant's combined Cross-Motion for Summary Judgment ("Cross-MSJ") and Opposition to Plaintiff's Merits Brief (Doc. 15). The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c). Considering the papers, the Administrative Record ("AR"), the facts, and the applicable law, it is respectfully recommended that Plaintiff's Merits Brief be **DENIED**, Defendant's Cross-MSJ be **GRANTED**, and the Administrative Law Judge's ("ALJ") decision be **AFFIRMED**.

## II. BACKGROUND & PROCEDURAL HISTORY

On August 24, 2015, Plaintiff filed an application for disability and disability insurance under Title II of the Act. (AR, at 16, 50.)[3] The alleged onset of disability is March 20, 2015. (*Id.* at 16, 130.) Plaintiff chiefly complains of two impairments: arthritis of the spine and muscular back pain. (*Id.* at 50; Doc. 14, at 14 (Plaintiff concedes "[she] alleges disability based primarily on back pain.").)

The SSA denied Plaintiff's claim initially and on reconsideration. (AR, at 50-58, 60-69.) Next, Plaintiff requested a hearing before an ALJ. (*Id.* at 86-87.) The ALJ held a hearing on January 29, 2018. (*Id.* at 30-49.) At the hearing, the ALJ elicited testimony from a vocational expert. (*Id.* at 46-48.)

On March 16, 2018, the ALJ's written decision found Plaintiff not disabled under the Act. (*Id.* at 16-25.) On March 6, 2019, after the Appeals Council denied review of the ALJ's decision, the decision became the final decision of the Commissioner under 42 U.S.C. § 405(h). (AR, at 1-4.)

## III. SUMMARY OF ALJ'S FINDINGS

In the decision, the ALJ determined Plaintiff met the insured status requirements of the Act through December 31, 2018. (AR, at 18.) The ALJ then followed the five-step

---

inappropriately cited Federal Rule of Civil Procedure 56 (i.e., summary judgment). Hereafter, Plaintiff's brief will be referred to as a Merits Brief.

[3] All AR citations refer to the number on the bottom right-hand corner of the page, rather than page numbers assigned by the CM/ECF system.

sequential evaluation process to determine Plaintiff's disability status. *See* 20 C.F.R. § 404.1520(a).

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since March 20, 2015, the alleged onset date. (AR, at 18.)

At step two, the ALJ found Plaintiff suffers from the following severe impairments: degenerative changes to the lumbar spine and mild osteoarthritis of the hips. (*Id.*) The ALJ found Plaintiff's borderline obesity and intermittent migraine headaches did not qualify as severe impairments. (*Id.* at 19.)

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (*Id.* at 19.)

Next, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work under 20 C.F.R. § 404.1567(b) with the following limitations:

> [s]he could lift and carry [twenty] pounds occasionally and ten pounds frequently. She could stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday. She could occasionally climb ramps and stairs. She should never climb ladders, ropes, and scaffolds. She could occasionally stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme cold, unprotected heights, and moving and dangerous machinery.

(AR, at 19-20.)

In determining the RFC, the ALJ considered all of Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence. *See infra* Part VI.A.ii., subsecs. 1-4, pp. 7-14; (AR, at 20-21.). The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged pain symptoms. (AR, at 20-21.)

The ALJ then evaluated the "intensity, persistence, [and] limiting effects of . . . [Plaintiff]'s symptoms to determine the extent to which they limit . . . [Plaintiff]'s functional limitations." (*Id.* at 20.) Ultimately, the ALJ found Plaintiff's allegations were not substantiated by the medical evidence. (*Id.* at 21.) In making this finding, the ALJ

3

3:19-cv-826-BEN-RBM

cited Plaintiff's diagnostic imaging, pain management treatment, physical therapy, and physical exams, which revealed normal findings. (AR, at 20-22.)

Because Plaintiff's subjective allegations of pain were unsubstantiated by the objective medical evidence, the ALJ considered "other evidence" to determine if the pain symptoms limit her ability to perform work-related activities. (*Id.* at 20.) This other evidence included Plaintiff's conservative treatment, the lack of medical opinions finding Plaintiff disabled, and Plaintiff's hearing testimony and physical presentation. (*Id.* at 20, 22-23.) The ALJ found the foregoing evidence weakened Plaintiff's allegations of disability. (*Id.* at 22.) Overall, the ALJ found the evidence did not support Plaintiff's subjective allegations impairment. (*Id.* at 24.)

At step four, the ALJ found Plaintiff has the RFC to perform past relevant work as a sales clerk. (*Id.*) Because the ALJ found Plaintiff has the RFC to perform past relevant work, the ALJ determined Plaintiff is not disabled under the Act. (*See* AR, at 24); *see also* 20 C.F.R. § 404.1520(a)(4). As a result, the ALJ did not analyze step five. (AR, at 24.)

In sum, the ALJ found Plaintiff was not disabled under the Act from March 20, 2015, through the date of his decision. (*Id.*)

## IV. ISSUE IN DISPUTE

This Court's review is limited to one issue: did the ALJ provide specific, clear and convincing reasons for discrediting Plaintiff's subjective allegations of impairment? (Doc. 14, at 4; Doc. 15, at 2-3.)

## V. STANDARD OF REVIEW

The Act provides for judicial review of a final agency decision denying a claim for disability benefits in federal district court. 42 U.S.C. § 405(g). "[F]ederal court review of social security decisions is limited." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court will uphold the Commissioner's disability determination "unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citing *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means "more than a

4

3:19-cv-826-BEN-RBM

mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). In reviewing whether the ALJ's decision is supported by substantial evidence, the Court must consider the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* at 1035 (quoting *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)).

The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *E.g., Garrison*, 759 F.3d at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). When evidence supports more than one rational interpretation, the ALJ's conclusion must be upheld. *E.g., Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Stated differently, when the evidence "can reasonably support either affirming or reversing a decision, [the Court] may not substitute [its] judgment for that of the [ALJ]"; rather, the Court only reviews "the reasons provided by the ALJ . . . and may not affirm" on other grounds. *Garrison*, 759 F.3d at 1010 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## VI. <u>DISCUSSION</u>

Plaintiff contends the ALJ's decision should be reversed for failing to provide specific, clear and convincing reasons for rejecting her subjective allegations of impairment. (Doc. 14, at 4-8.) Plaintiff claims the ALJ cherry-picked unfavorable medical records, mischaracterized Plaintiff's treatment, and failed to cite any of Plaintiff's daily activities that contradict Plaintiff's claimed disability. (*See id.*) Defendant counters that the ALJ's decision should be affirmed, because the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting the claim. (Doc. 15-1, at 2-10.)[4]

---

[4] Defendant argues the Ninth Circuit's "clear and convincing" standard is inconsistent with the "substantial evidence" standard, and thus, is inapplicable. (Doc. 15-1, at 2-3.) The standards are not inconsistent. The substantial evidence standard applies to review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). *Garrison*, 759 F.3d at 1009. The specific, clear and convincing reasons standard applies when the ALJ rejects a plaintiff's subjective allegations of impairment. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)). As outlined herein, both standards apply.

5

Analyzing the parties' arguments and the ALJ's decision, the undersigned respectfully recommends the ALJ's decision be **AFFIRMED**.

### A. The ALJ Provided Specific, Clear and Convincing Reasons for Rejecting Plaintiff's Subjective Allegations of Impairment

In assessing the credibility of Plaintiff's subjective allegations of disability, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's subjective allegations of impairment. (AR, at 21-24.) As outlined below, the ALJ relied upon four categories of evidence to reject Plaintiff's subjective allegations of disability: (1) objective medical evidence; (2) Plaintiff's conservative treatment; (3) a lack of medical opinion finding Plaintiff disabled; and (4) Plaintiff's hearing testimony and physical presentation which were inconsistent with disability. *See infra* pp. 7-14; (AR, at 20).

#### i. The ALJ's Duty to Evaluate Subjective Claims of Impairment

The ALJ engages in a two-step analysis to assess the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms. *Molina*, 674 F.3d at 1112 (internal citation omitted). First, the ALJ determines "whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* If the claimant presents such evidence to satisfy the first step, an ALJ can reject the claimant's subjective allegations of impairment only upon (1) finding evidence of malingering, or (2) expressing "specific, clear and convincing reasons" for doing so. *Burrell*, 775 F.3d at 1136 (quoting *Molina*, 674 F.3d at 1112); *see Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). In addition to objective medical evidence, an ALJ must consider each of the factors set forth in 20 C.F.R. § 404.1529 to assess the credibility of pain symptoms. *Willyard v. Colvin*, 633 F. App'x 369, 370 (9th Cir. 2015). In assessing credibility, the ALJ may consider the consistency between claimant's allegations of disabling impairments with the objective medical evidence, claimant's daily activities, and claimant's ability to treat symptoms with medication. *E.g., Lingenfelter*, 504 F.3d at 1040.

///

"Generally, questions of credibility and resolution of conflicts in the testimony are functions solely for the agency." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (internal citation and quotations omitted). An ALJ may discredit a claimant's subjective statements of impairment, but the ALJ must "identify what testimony is not credible and what evidence undermines [that testimony]." *See, e.g., Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (finding inconsistencies in reported symptoms and activities supported ALJ's decision to discredit impairment allegations).

ii. <u>Analysis</u>

1. <u>Objective Medical Evidence</u>

At the outset of the ALJ's RFC determination, the ALJ analyzed the objective medical evidence and compared it with Plaintiff's subjective allegations of disability. (AR, at 21-23.) The ALJ cited diagnostic imaging, physical examination notes, physical therapy notes, and pain management treatment notes and opined the foregoing generally did not support Plaintiff's allegations of disabling pain. (*Id.* at 21-22.)

As to diagnostic imaging, the ALJ found it "did not reveal anything in [Plaintiff's] spine or joints to support [her] allegations of pain and limitation." (*Id.* at 21.) Specifically, the ALJ found no evidence of "nerve root impingement, severe stenosis, progressive neurological defects, infections or fractures . . . ." (*Id.*) The ALJ analyzed findings from four x-rays. (*Id.*) An x-ray from March 2015 revealed "only degenerative changes of the spine with malalignment and anterolisthesis at L4 on L5." (*Id.*) Three October 2017 x-rays of various body parts revealed mild-to-normal findings: (1) a spine x-ray revealed no acute diseases, only mild multilevel degenerative disc disease, and mild grade-one spondylolisthesis at L4; (2) a hip x-ray revealed only mild osteoarthritis in the bilateral hips; and (3) a sacroiliac joint x-ray revealed normal findings. (*Id.* at 21, 343, 403-04, 410.)

The ALJ also cited physical exam notes that undermined Plaintiff's subjective allegations of impairment. One examination, around the alleged onset date, revealed full range of motion in the spine in all directions, full strength in the upper and lower

7

3:19-cv-826-BEN-RBM

extremities, negative straight leg raise tests, and no tenderness to palpitation in the lumbar spine. (AR, at 21, 341.) Plaintiff's primary care provider, Kelly Jarvis, PA-C ("Jarvis"), diagnosed Plaintiff with lumbago and referred her to pain management and physical therapy. (*Id.* at 21, 338, 341.) At a later visit, Plaintiff continued to exhibit negative straight leg raise tests, full strength in the bilateral lower extremities, and no tenderness or neurological deficits. (*Id.* at 21, 334.) The ALJ also cited treatment notes from Le Tram, M.D. ("Dr. Tram") dated June and November 2017, where Dr. Tram diagnosed Plaintiff with degenerative joint disease and prescribed Oxycodone, Morphine, and Neurontin. (*Id.* at 22, 405.) But these treatment notes indicated a normal physical exam where Plaintiff demonstrated full range of motion, full strength in the extremities, and normal reflexes. (*Id.*) The ALJ also acknowledged exam notes revealing tenderness and decreased range of motion in the spine, but the ALJ found "few other abnormalities." (*Id.* at 22.) For example, a September 2017 exam revealed limited range of motion in the back and tenderness in the spine but no evidence of a paraspinal spasm. (*Id.* at 22, 428.) During an exam the next month, Plaintiff continued to report tenderness in the "lumbar spine at L3-L5 and in the sacroiliac joints." (*Id.* at 22, 423-24.) But in the same exam, Plaintiff also exhibited negative straight leg raise tests, no evidence of muscle spasms, and full strength in the upper and lower extremities. (*Id.*) Subsequent examinations revealed similar findings, along with a normal gait. (*Id.* at 22, 414-15, 418-19.)

As to physical therapy and pain management treatment, the ALJ cited notes spanning from March 11, 2015 to November 29, 2017. The ALJ found this treatment "routine and conservative and consisting primarily of pain management." (*Id.* at 21-22, 304-60, 406-36.) The ALJ noted Plaintiff only attended "a few sessions" of physical therapy for back pain after her onset date. (*Id.* at 21, 280.) Pain management progress notes dated November 2015 revealed negative straight leg raise tests. (*Id.* at 21, 387-88, 394, 399, 400.) The ALJ acknowledged Plaintiff's report of nerve pain beginning in July 2016, but he also cited Plaintiff's subsequent reports of compliance with her treatment regimen, experiencing no side effects, and achieving pain management as of May 2017. (*Id.* at 21,

8

393.) Finally, the ALJ also acknowledged a pain management visit with Alicia Steiner, M.D. ("Dr. Steiner"), where Dr. Steiner diagnosed Plaintiff with chronic pain syndrome and prescribed various medications including Meloxicam, Gabapentin, Topamax, Morphine, and Oxycodone as needed. (AR, at 22, 409, 413, 424, 429, 431, 434.)

The ALJ properly relied upon the above evidence—lack of nerve impingement, severe stenosis, progressive neurological defects, fractures, or muscle spasms coupled with normal exam findings—in concluding it did not support Plaintiff's allegations of disabling pain. (*Id.* at 20-22, 334, 341, 403-04, 410, 414-15, 418-19, 421, 423-24, 428); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's rejection of claimant's allegations of severe low back pain when imaging showed only mild degenerative disc disease and dextroscoliosis with no apparent disc herniation or nerve impingement). A lack of objective medical findings to support a claim of disability is a factor the ALJ may consider in discrediting Plaintiff's allegations. *Burch*, 400 F.3d at 681 (stating, "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). But the ALJ cannot rely entirely on a lack of objective medical evidence to reject subjective allegations of pain: he must consider other evidence as well. *Id.*; *see also Willyard*, 633 F. App'x at 370. Thus, the Court must examine the other evidence relied upon by the ALJ.

2. Conservative Nature of Treatment

The ALJ properly cited Plaintiff's conservative treatment as a specific, clear and convincing reason to reject her subjective allegations of impairment. The ALJ's analysis focused on two critical findings: (1) the treatment effectively managed Plaintiff's pain; and (2) the treatment itself has been routine and conservative.

Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (citing *Parra*, 481 F.3d at 750-51); *see also Lingenfelter*, 504 F.3d at 1040. Impairments that can be controlled effectively with medication are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see* 20 C.F.R. §

9

404.1529(c)(3)(iv) (medications may be considered in assessing claimant's subjective symptoms).

Here, the ALJ cited various treatment records evidencing Plaintiff's ability to conservatively treat her symptoms. (AR, at 21.) Around the alleged onset date, Plaintiff reported using Motrin, as needed, one to two times per month. (*Id.* at 21, 339.) After pain management treatment in November and December 2015 and being prescribed various pain medications, Plaintiff reported no side effects and subsequently reported only taking medication at night "due to work responsibilities." (*Id.* at 21, 387-88, 392, 394, 399-400.) Around July 2016, Plaintiff's pain management provider prescribed Gabapentin and Mobic after Plaintiff reported nerve pain. (*Id.* at 21, 394, 399, 400.) Nearly one year later in May 2017, progress notes indicate Plaintiff's compliance with her treatment regimen, no reported side effects, and Plaintiff achieved pain management. (*Id.* at 21, 393.) In June and November 2017, Dr. Tram prescribed Oxycodone, Morphine, and Neurontin. (*Id.* at 22, 405.) Dr. Steiner subsequently administered Ketorolac Tromethamine and Vitamin B12 injections and prescribed various medications to take as needed: Meloxicam, Gabapentin, Topamax, Morphine, and Oxycodone. (*Id.* at 22, 413, 424, 429, 435.) The ALJ highlighted an October 2017 physical exam note wherein Plaintiff reported to be doing well with treatment, able to perform activities of daily living, and that medication helped with pain control. (*Id.* at 22, 421.) The ALJ also noted a November 2017 record where Plaintiff declined Toradol injections but refilled her medications. (*Id.* at 22, 415.)

At the hearing before the ALJ, Plaintiff testified to experiencing constant and daily pain precipitated without exertion. (*Id.* at 20, 42-43 (stating "[t]his is everyday pain, every day, all throughout the day. . . . It's not that I exert myself . . . it just happens. The pain just appears.").) Plaintiff also testified that she can only walk eight to ten minutes and stand fifteen to twenty minutes. (*Id.* at 37, 41.) Plaintiff then admitted receiving "some injections but not on my spine and not on my lower back. . . these injections were given on my arm." (*Id.* at 41.)

///

The ALJ properly contrasted Plaintiff's statements of constant and daily unprovoked pain with her previous statements and medical records reporting no side effects, achieving pain management, performing activities of daily living, and using medication only as needed or sparingly. (AR, at 20-22, 339, 387-88, 392-94, 399-400, 421); *see also Lingenfelter*, 504 F.3d at 1040. The ALJ also relied upon Plaintiff's statements that she was doing well with treatment, medication helped with pain control, and she only received injections in the arm—never in the spine or lower back. (AR, at 22, 41, 421.)

Plaintiff cites *Lapierre-Gutt v. Astrue* to rebut the position that her treatment has only been conservative. (Doc. 14, at 8 (citing 382 F. App'x 662, 664 (9th Cir. 2010).) But *Lapierre-Gutt* is distinguishable. First, the medication dosages and types of injections are significantly different. In *Lapierre-Gutt*, the plaintiff's treatment consisted of "copious amounts of narcotic pain medication [and] occipital nerve blocks, and trigger point injections." 382 F. App'x at 664. But here, physicians prescribed several pain medications to Plaintiff on an as-needed basis. (AR, at 22, 413, 424, 429, 435.) And Plaintiff did not receive injections in the back or spine as in *Lapierre-Gutt*; instead, she received injections in the arm. 382 F. App'x at 664; (AR, at 41). In fact, Plaintiff rejected Toradol injections and opted to refill her medication instead. (AR, at 22, 415.) Unlike *Lapierre-Gutt*, Plaintiff did not receive occipital nerve blocks or injections to the head. 382 F. App'x at 664.

By highlighting medical reports and Plaintiff's statements that are consistent with conservative treatment, the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's subjective complaints of disability. *See Tommasetti*, 533 F.3d at 1039.

### 3. Medical Opinions

The ALJ properly cited medical opinion evidence as a specific, clear and convincing reason to reject Plaintiff's subjective allegations. Specifically, the ALJ examined opinions of treating providers, state agency medical consultants, and a consultative examiner, none of whom opined Plaintiff has a disabling impairment.

///

///

To determine disability status, the ALJ considers medical opinions with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b).[5] The ALJ may cite medical opinions as specific, clear and convincing reasons to reject Plaintiff's subjective allegations of pain. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (ALJ's reliance on medical opinion as to plaintiff's ability to perform sedentary work is a specific reason to discredit plaintiff's subjective allegation of pain); *see also Skuja v. Colvin*, 671 F. App'x 463, 464-65 (9th Cir. 2016) (ALJ's finding inconsistencies between plaintiff's symptom testimony and opinions of several medical examiners is a clear and convincing reason to discredit plaintiff's subjective allegations).

Here, medical opinions were both favorable and unfavorable to Plaintiff. Plaintiff's treating providers diagnosed Plaintiff with lumbago, degenerative joint disease, and chronic pain syndrome. (AR, at 21, 22, 338, 341, 405, 409, 431, 434.) The ALJ, however, noted that "*none of . . . [Plaintiff's treating providers opined that [Plainitff] had disabling conditions.*" (*Id.* at 23 (emphasis added).) Since these treating physicians did not opine that Plaintiff has disabling conditions, the ALJ did not assign a particular weight to the findings. Rather, the ALJ considered the treating physician diagnoses in the context of all of the objective medical evidence. *Supra*, pp. 7-10.

At the initial and reconsideration levels, state medical consultants opined Plaintiff can work at the light exertional level. (AR, at 23, 50-69.) The ALJ assigned partial weight to these opinions, as the consultants examined the record and offered opinions consistent with the hearing evidence. (*Id.* at 23, 334, 341, 403-04, 410, 414-15, 418-19, 423-24.)

As to the consultative examiner's opinion finding Plaintiff capable of performing work at the heavy exertional level, the ALJ assigned only partial weight to the opinion. (*Id.* at 23.) The examiner evaluated Plaintiff in April 2014, before her alleged onset date, as part of a prior application. (*Id.*) The ALJ highlighted that the examiner found symptoms

---

[5] For claims filed before March 27, 2017, the ALJ analyzes medical opinion evidence under 20 C.F.R. § 404.1527. 20 C.F.R. §§ 404.1527, 404.1520c.

12

of low back pain unsubstantiated by physical findings and opined that Plaintiff exaggerated her symptoms. (AR, at 23, 240, 244-46.)

As to Plaintiff's treating physician, Stanley Levine, M.D. ("Dr. Levine"), the ALJ accorded no weight to Dr. Levine's May 2014 opinion and report. (*Id.* at 23.) The ALJ rejected the opinion because it pre-dated the alleged onset date and was inconsistent with treatment records and progress notes. (*Id.* at 23, 247-74, 334, 341, 403-04, 410, 414-24.)

Next, the ALJ contrasted the lack of medical opinions finding Plaintiff disabled with Plaintiff's subjective allegations. (*See id.* at 20, 41-43, 206.) Plaintiff claims she is unable to stand more than twelve minutes or lift more than ten pounds, and she experiences constant unprovoked pain. (*Id.*) Plaintiff's reportedly uses medical devices, including a shower chair and cane. (*Id.*) The ALJ found Plaintiff's claimed limitations and required use of medical devices as unsubstantiated, exaggerated, or explicitly contradicted by medical opinions. (*Id.* at 23, 50-58, 60-69, 240, 244-46); *Skuja*, 671 F. App'x at 464-65. First, no treating provider opined Plaintiff has disabling conditions and Plaintiff has no prescription for medical devices. (AR, at 23.) Second, the medical examiners opined Plaintiff could work at light-to-heavy exertional levels and found her symptoms and claims of low back pain unsubstantiated and exaggerated. (*Id.* at 23, 50-58, 60-69, 240, 244-46.)

Thus, the ALJ gave specific, clear and convincing reasons for rejecting Plaintiff's subjective allegations as inconsistent with medical opinions. *Moncada*, 60 F.3d at 524; *Skuja*, 671 F. App'x at 464-65.

### 4. Plaintiff's Statements

Finally, the ALJ identified several statements by Plaintiff that undermined her subjective allegations of impairment.

An ALJ may discredit subjective allegations of impairment by identifying "what testimony is not credible and what evidence undermines [that testimony]." *See, e.g., Berry*, 622 F.3d at 1234; *see Robinson v. Berryhill*, 690 F. App'x 520, 525 (9th Cir. 2017) (upholding ALJ's determination that "[plaintiff's] inconsistent statements regarding his drug use hurt his credibility."). Stated differently, an ALJ may reject a claimant's

13

testimony for inconsistencies between the testimony and allegations. *Tommasetti*, 533 F.3d 1039-40. An ALJ may also consider a claimant's prior work record and statements about her symptoms to determine the intensity and persistence of her symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ cited Plaintiff's hearing testimony and physical presentation that "weaken[ed] . . . [Plaintiff]'s allegations of disabling symptoms." (AR, at 22.) Plaintiff brought a cane and wore a wrist brace to the hearing, but she admitted that no physician or medical professional prescribed the devices. (*Id.*) Plaintiff testified she had these items in stock from her previous job selling medical supplies. (*Id.*) The ALJ observed "[Plaintiff] was *carrying the cane, not using it*." (*Id.* at 22-23 (emphasis added).) The ALJ also cited Plaintiff's testimony that she stopped working for reasons not completely related to her alleged impairments. (*Id.* at 22, 39 (Plaintiff's hearing testimony stating, "[w]hy did I stop? It's because our sales were very low and we were getting a lot of kickback from Medicare . . . .").) The ALJ found this testimony conflicted with Plaintiff's "reported disability due to arthritis of the spine and muscular back pain." (*Id.* at 20.)

The ALJ is in the best position to assess credibility and resolve conflicts in the testimony. *Parra*, 481 F.3d at 750. The ALJ's physical observations of Plaintiff at the hearing as well as his assessment of Plaintiff's conflicting statements concerning why she stopped working, constitute additional specific, clear and convincing reasons to discredit Plaintiff's subjective allegations of impairment. *See Tommasetti*, 533 F.3d at 1039-40; *see Hanes v. Colvin*, 651 F. App'x 703, 705 (9th Cir. 2016) (stating "[t]he ALJ did not err in giving slight weight to his personal observations of [plaintiff's] functioning at the hearing because the observations did not form the 'sole basis' of his adverse credibility determination."); *see Chaudhry v. Astrue*, 688 F.3d 661, 665, 671-72 (9th Cir. 2012) (affirming ALJ's determination that claimant lacked credibility in part for claimant's unprescribed use of a wheelchair and cane).

/ / /

In sum, the ALJ properly offered specific, clear and convincing reasons to reject Plaintiff's subjective allegations of impairment. *Burrell*, 775 F.3d at 1136; *see Benton*, 331 F.3d at 1040. As such, the undersigned recommends the ALJ's decision be **AFFIRMED**. Because the Court recommends affirming the ALJ's decision, it is unnecessary to analyze the "credit-as-true" rule as to awarding benefits. (Doc. 14, at 8-9; Doc. 15, at 9.)

## VII. CONCLUSION

For the reasons given, the ALJ's decision is supported by substantial evidence. This Court respectfully recommends: (1) Plaintiff's Merits Brief be **DENIED**; (2) Defendant's Cross-MSJ be **GRANTED**; and (3) the ALJ's decision be **AFFIRMED**.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). Any party may file written objections with the Court and serve a copy on all parties on or before **April 27, 2020**. The document should be captioned "Objections to Report and Recommendation." Any reply to the Objections shall be served and filed on or before **May 11, 2020**. The parties are advised that failure to file objections within the specific time may waive the right to appeal the District Court's Order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: April 13, 2020

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES MAGISTRATE JUDGE